In re Charles Wayne TURNER, f/d/b/a Turner Spraying Service, Debtor.

Charles Wayne TURNER, f/d/b/a Turner Spraying Service, Plaintiff,

v.

UNITED STATES DEPARTMENT OF the TREASURY/INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. 82–05130.
Adv. No. 82–7343.

United States Bankruptcy Court,
D. North Dakota.

Nov. 15, 1983.

Roger J. Minch, Fargo, N.D., for plaintiff.

Frank G. Gokey, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court on a Motion for summary judgment brought by the Defendant, United States Department of Treasury. The Motion was filed on May 5, 1983, and is resisted.

On December 28, 1981, a delegate of the Secretary of the Treasury made an assessment, pursuant to section 6672 of the Internal Revenue Code of 1954, 26 U.S.C. § 6672, and gave notice of the assessment and made demand for payment against the Plaintiff, Charles Wayne Turner. The assessment, in the amount of $17,536.74, was made against the Plaintiff on December 28, 1981, and was based on the government's determination that Turner was a person responsible for paying the withholding and Federal Insurance Contributions Act taxes of Turner Aviation Services, Inc., d/b/a Real West Airlines (Turner Aviation) for the fourth quarter of 1979, who had knowledge that these taxes had not been paid and who knowingly failed to see that they were paid at a time when there were funds available to pay them.

The Plaintiff filed for protection under Chapter 7 of the Bankruptcy Code on March 16, 1982, and on October 13, 1982, filed the instant adversary proceeding asking that the tax assessment be disallowed as having no basis in fact. The Plaintiff was granted a discharge on August 2, 1982, and July 16, 1982, was fixed as the last day for filing objections. The government filed its proof of claim on August 23, 1982. The

Plaintiff has raised the fact of late filing as a defense as well. Section 501 of the Code does not require the filing of a proof of claim particularly where, as here, there are no assets. The Court considers this defense immaterial to the issue which is the validity of the government's § 6672 assessment against the Plaintiff.

To grant the Defendant's Motion for summary judgment requires the determination of whether or not there remains a genuine issue of material fact. If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue, then the Defendant, as moving party, is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *United States v. Davidson,* 558 F.Supp. 1048 (D.C. W.D.Mich.1983). The burden is on the moving party to establish the lack of any issue of material fact. In the instant case, the Defendant places primary reliance upon the deposition testimony of the Plaintiff taken in December of 1982. The Plaintiff, in opposing the Motion, also relies on the deposition but also makes reference to the affidavit of Graham J. Goeson, filed with the Court in May of 1983. The Court, in making its determination, has referred to these documents as well as the substantial number of exhibits that were introduced through the deposition testimony and now a part of the record. Before discussing the factual background as evidenced from these sources, it is well to first consider the authority relied upon by the government for the assessment made against the Plaintiff.

1.

 Employers are required to deduct and withhold FICA and federal income taxes from employees' wages. Once withheld, the amounts so withheld are to be paid to the government on a quarterly basis. 26 U.S.C. § 7501. Further, the employer must make a report of the amounts withheld by filing with the IRS a quarterly payroll tax return known as IRS Form 941. Under the terms of § 7501, once wages are withheld, they are deemed to be held in trust for the benefit of the United States, and the employees from whose wages the withholdings have been made are given credit for the amount withheld irrespective of whether or not the sums withheld by his employer are ever, in fact, paid over to the government. *Emshwiller v. United States,* 565 F.2d 1042 (8th Cir.1977). These funds once withheld from an employee's wages become, in essence, property of the government by virtue of their trust status and may not be used by the employer for any of his business operations or expenses. *Builders Finance Co. v. United States,* 352 F.Supp. 491 (E.D.Mich. 1970); *Mueller v. Nixon,* 470 F.2d 1348 (6th Cir.1972). If the employer does not forward the withheld sums to the government, a loss results to the United States because of the employee credit which cannot be negated.

 Congress enacted § 6672 of Title 26 to afford the government an avenue with which to proceed against those persons who had the responsibility to withhold and make payment to the government of the withheld sums. This section provides as follows:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for any pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."

Pursuant to this section, courts have declared two conditions precedent before a person can be assessed with tax liability. First he must be the person *responsible* for the collection and payment of the tax and secondly he must have *willfully* failed to collect and pay over said tax. *Davidson,* supra; *Emshwiller,* supra; *United States v. Hill,* 368 F.2d 617 (5th Cir.1966).

In determining whether a person being assessed is a responsible person, courts have developed various tests and while not all of these factors must exist in each case, the totality of the factors that do exist must

establish that the person had significant control over the company's finances. The factors to be considered are:

1. Whether the person was an officer or director;

2. Whether he had authority to sign company checks;

3. Whether he signed the company tax returns;

4. Whether he had the power to hire and fire employees;

5. Whether he had, either alone or with others, control over the company's financial affairs;

6. Whether he had an entrepreneurial stake in the company, either by virtue of stock ownership or other financial interest. *United States v. Sotelo,* 436 U.S. 268, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978); *Davidson,* supra; *In re Carlton,* 26 B.R. 202 (Bkrtcy.M.D.Tenn. 1982).

■ From the foregoing enumeration, it is clear that the test for responsibility is a functional one which focuses on the degree of influence and authority a person has over the day-to-day company operations. Absolute control or authority is not necessary.

■ The term willful as applied to § 6672 cases does not require that the act be done with an evil or fraudulent intent or bad motive. *Monday v. United States,* 421 F.2d 1210 (7th Cir.1970). It is enough if the person acts or fails to act consciously and voluntarily and with the knowledge that as a result of his action or inaction trust funds belonging to the government will not be paid over as required by § 7501. *Davidson,* supra; *Hartman v. United States,* 538 F.2d 1336 (8th Cir.1976). The *Davidson* case held that it is enough if the responsible person had knowledge of the delinquency and failed to rectify it when there were funds available.

### 2.

Turner Helicopter Service, Inc. was incorporated in July of 1975. Its incorporators and directors were the Plaintiff, his wife and son. The Plaintiff was president of the company and remained its president throughout the period in question despite later corporate amendments and the addition of stockholders. Initially, the Plaintiff was the sole stockholder, but when the company began to have financial difficulties, he sold a 60% interest to Morrell Dixon, Duane Dixon and Ray Martin for $100,000.00. The new stock was issued on June 5, 1979. In April of 1979, the company name was changed to Turner Aviation Service, Inc. which did business under the name Real West Airlines.

The original bylaws of Turner Helicopter Service, Inc. vested the Plaintiff, as president, with the power to preside over directors and stockholders meetings and exercise general supervision over the affairs of the company and its officers. Turner was never removed as president nor was his power ever reduced by subsequent corporate meetings or resolutions.

Even though he was no longer sole stockholder, Turner was still majority holder. He continued to sign the company's checks until the company was dissolved in June of 1980. He was the only person authorized to borrow funds and as late as November of 1979 a corporate resolution was passed authorizing him to negotiate a $1,000,000 loan. He signed the company's tax returns and, in fact, signed its final Employer's Quarterly Federal Tax return. During the third quarter of 1979, the company deducted and withheld income taxes and social security taxes from its employee's wages. Turner knew the payroll taxes were not being paid over to the government, and he was aware of the obligation to do so. On several occasions he sent letters to the Fargo, North Dakota IRS office advising them of problems the company was having and that payments were not being made. During the later part of 1979 (October, November, December), substantial funds were deposited into the bank account of the company, and also during this period the Plaintiff continued to sign checks to various creditors including his own salary check and other payroll checks. At least 11 checks were

paid to other creditors during this period totalling over $11,600.00.

The foregoing facts are uncontroverted. The Plaintiff, however, points to other circumstances which he asserts establish that by the fourth quarter period of 1979 he had lost such control over the affairs and finances of the company that he could no longer be considered "the person responsible." This position stems primarily if not exclusively, from the fact that the investors, primarily Morrell Dixon, began to exercise greater personal control over the company in the summer and fall of 1979. While Turner continued to sign the checks but for any amounts over $400.00, it was Dixon who made the decision as to who or what was going to be paid, including the government. Increasingly, Dixon began to assume financial control and even moved into Turner's former office. During this period, however, the Plaintiff continued to be actively involved in the business. He testified he was busy during the fall setting up routes for the airline and working with ticket agents. When Turner became aware of the fact that payroll taxes were not being paid, he talked to Dixon about it as well as the company CPA. But, according to Turner, that was all he could do since he no longer was in control of the company purse strings. Essentially, it is his position that by the fall of 1979 he was nothing more than a figurehead with real control resting with the investors. This is similar to the argument presented by the taxpayer in *Hartman,* supra, who owned only 20% of the company stock and who was nothing more than a figurehead. The court noted that, despite this claim, the taxpayer was familiar with withholding requirements, had signed Form 941, signed the company's corporate return and continued to co-sign checks on the company's general account. These factors were enough to constitute him a responsible person.

Similarly, in *Davidson,* supra, the taxpayer claimed that although he was president of the company, substantially all of its financial affairs were taken over by a major creditor. This creditor made the decision as to who was going to be paid but it remained the taxpayer who had authority (as here) to sign the checks. Also, in *Davidson* as in the instant case, the taxpayer said he couldn't pay the taxes without the creditor's permission and if he did he would be put out of business. Turner also advances this argument to the effect that he would have lost his job. *Davidson* stands for the position that a person is not absolved from paying taxes withheld irrespective of what consequences may be threatened by others if he does. Even more in point is *Howard v. United States,* 711 F.2d 729 (5th Cir.1983) where the district court granted the government's motion for summary judgment and the appellate court affirmed. The taxpayer was a minority stockholder and an officer of the company. He was sole signatory on the company's checking account for most of the period in question. Another individual was majority shareholder and had assumed substantial financial control to a degree that he had told the taxpayer not to pay the IRS on pain of being fired. The taxpayer argued he was not a responsible person because he was not the majority shareholder nor did he have ultimate control over all payments to creditors. The court found these arguments to be without merit and held that authority of a responsible person was established by the fact that the taxpayer was an authorized signatory and did issue small checks.

■ In view of the applicable caselaw, this Court finds the Plaintiff's arguments unpersuasive. It is uncontroverted that at all times the Plaintiff was the company president, had authority to sign checks, was involved in the day-to-day operation of Real West and was critically interested from an entrepreneurial standpoint in its future. The fact that other investors exerted control over the company's financial affairs does not absolve the Plaintiff from his duties as the company's chief officer. At the most, the problems as they developed with Dixon and the other investors can be considered as nothing more than extenuating circumstances as to why he did not pay the withholding taxes, but these circumstances do not absolve him of his responsi-

bility. The evidence is substantial that Charles Turner at all times was a responsible person within the meaning of § 6672.

The Court is also satisfied that his action was wilful. The facts leave no doubt that he knew of the obligation to withhold and pay the taxes and that he failed to do so during a time when there were funds in the company bank account. Mr. Turner had no choice; his was the obligation to pay the IRS to the complete exclusion of every other creditor and employee, if necessary.

This Court is pursuaded from the foregoing analysis of the facts that there exists no maternal question of fact as to whether Charles Wayne Turner was the person responsible for collecting and paying the withholding tax and that his failure to do so was wilful. Accordingly,

IT IS ORDERED that the Defendant's Motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that the prevailing party shall prepare and submit a judgment in conformity herewith.